IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-CV-00310-M-KS

| | |
|---|---|
| ALEXANDER N. ASANOV, individually, and on behalf of his children, Daniel A. Asanov, Nicolas A. Asanov, minor A.V.K., similarly situated children and parents - victims of the Kids-For-Cash-NC criminal industry, and on behalf of future generations of American children and parents,<br><br>Plaintiffs,<br><br>v.<br><br>TANYA A. PLEKAN, ANNA E. WORLEY, MONICA M. BOUSMAN, JULIE L. BELL, OLGA S. ASANOV, and OLENA M. KRAVETS,<br><br>Defendants. | ORDER |

This matter comes before the court for review of three Memoranda and Recommendations filed on January 29, 2024, February 2, 2024, and February 6, 2024, by Magistrate Judge Kimberly A. Swank, in accordance with 28 U.S.C. § 636(b). DE 52; DE 55; DE 56. In the First Recommendation, Judge Swank recommends that the court deny Plaintiff's Motion to Appoint Dual-Qualified Attorney, Motion to Impose Victim-Protection Program & Motion to Order DOJ/FBI Investigation [DE 12] and deny Plaintiff's Reinstated Motion to Order DOJ/FBI Investigation & Motion to Arrest [DE 21]. DE 52 at 4. In the Second Recommendation, Judge Swank recommends that the court deny Plaintiff's Motion for Default Judgment as to Belinda K. Sukeena [DE 44]. DE 55 at 1. In the Third Recommendation, Judge Swank recommends that the court grant three Motions to Dismiss filed by Defendants [DE 25; DE 28; DE 32]. DE 56 at 10.

1

The three Recommendations were served on the parties. Plaintiff timely objected to each Recommendation. DE 57; DE 58; DE 59.

## I. Factual Background

As recounted by Judge Swank in the First Recommendation:

> This action appears to stem from family court proceedings involving Plaintiff, Alexander N. Asanov, and his former wives Olga S. Asanov and Olena M. Kravets. On June 13, 2023, Plaintiff filed a "class action complaint" asserting claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) against his former wives, their lawyers, and three Wake County District Court Judges. Plaintiff alleges they are part of a criminal conspiracy (dubbed by Plaintiff as "Kids-For-Cash-NC"), the purpose of which is to deprive law-abiding citizens of their civil rights.

DE 52 at 2 (internal footnote omitted). This recitation is consistent with Plaintiff's allegations. *See* DE 1 at 1-2 (describing "organized criminal group of offenders, who committed their crimes Kids-For-Cash-NC under the color of justice to criminally enrich themselves, to mutilate for life minor children, and reward their co-conspirators for their attempted-murders and other felony crimes"), 2-3 (asserting that "mental health evaluation[s]" should have been performed for Plaintiff's ex-wives, and that "[i]t took criminal collusion between dirty lawyers and corrupt judges . . . to escape [these] mental health evaluation[s]"), 4 (contending that this "group of offenders is driven by their pathological greed, belligerent feministic hate to all males on gender basis, and other immoral anti-social motivations"), 5 (alleging that Defendants "exploit[ed] gross deficiencies of the NC legal system to commit their crimes"), 8 ("urg[ing] this Court and U.S. Federal authorities to design all necessary mechanisms to uphold the law, dissolve the industry of crimes, and to punish the criminals, rather than to exploit the legal system to intimidate the victims of the Kids-For-Cash-NC crimes"), 9 (requesting "creat[ion of] a special commission"), 11 (alleging conspiracy "to violate the civil rights of Plaintiffs and those similarly situated utilizing a widespread and persistent practice of the Kids-For-Cash-NC schemes in the Wake County

2

Courts"), 11 (describing fraudulent conduct as "similar to that committed by Stalin and Beria in the former USSR"), 12 (suggesting that Defendants "suffer[] from organic psychiatric disorders, biologically hate males, and are also suffering from pathological, anti-social belligerent feminism disorders"), 17 (asserting that one ex-wife "colluded with [an attorney] and other members of the organized group of Defendants to buy [Plaintiff's] children at about $15,000.00 each"), 21 (contending that certain judges "have extremely low, detrimental reputation[s] in Wake County community and among honest lawyers"), 22 (stating "goal [as] to improve the U.S. legal system and cleanse it from corrupt judges and criminally misconducting lawyers"), 26 (maintaining that Plaintiff "was the primary caregiver to his sons . . . and provided to them the best family environment, a child and society can dream about"), 35 (alleging that Defendants' conduct has interfered with Plaintiff's "professional work in the area of biological safety [which] is funded by the U.S. government and is of paramount critical importance for U.S. national safety").

## II. Legal Standards

A magistrate judge's recommendation carries no presumptive weight. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023). The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Without specific objection, *de novo* review is unnecessary, and a district court need only check for clear error on the face of the record to accept the magistrate judge's recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing 28 U.S.C. § 636(b)(1)).

3

## III. First Recommendation (DE 52)

In the First Recommendation, Judge Swank recommends that the court deny Plaintiff's Motion to Appoint Dual-Qualified Attorney, Motion to Impose Victim-Protection Program & Motion to Order DOJ/FBI Investigation, and deny Plaintiff's Reinstated Motion to Order DOJ/FBI Investigation & Motion to Arrest. DE 52 at 4. As to Plaintiff's motion requesting appointment of counsel, the Recommendation observes that "there is no right to court-appointed counsel in civil cases." DE 52 at 3. As to the motions seeking victim protection and federal investigation, the Recommendation properly construes Plaintiff's request "as a petition for a writ of mandamus," and explains that mandamus relief is unavailable "to compel an act that involves the exercise of judgment or discretion." *Id.* at 3-4.

Plaintiff filed a lengthy objection to the First Recommendation, wherein he largely restated the allegations from his Complaint. *See generally* DE 57 at 1-9. The court has reviewed the objection carefully and construed its arguments liberally, as it must. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, "[d]istrict courts are not expected to relitigate entire cases to determine the basis of a litigant's objection." *Elijah*, 66 F.4th at 460. As a result, the bulk of Plaintiff's objection to the First Recommendation is improper, because it merely restates allegations from the Complaint that have no bearing on the motions that Judge Swank considered in the First Recommendation.

After review and liberal construction, the court has identified three sentences in the objection that could plausibly be considered objections to the First Recommendation. First, Plaintiff notes that appointment of counsel to assist him would further considerations of "judicial economy." DE 57 at 7. But the same could be said in almost any civil case. Plaintiff's objection,

4

therefore, provides no basis to disregard the default rule that "there is no right to appointment of counsel in a civil case." *Geter v. Taharra*, 429 F. App'x 265, 266 (4th Cir. 2011).

Second, Plaintiff suggests that, "[e]ven in the case [that] this court does not have jurisdiction to order or to promote expedited FBI investigation, [he] respectfully moves this court to design necessary mechanisms to stop the crimes without delay." DE 57 at 8. Plaintiff's vague request for necessary mechanisms "prevents the [] court from focusing on disputed issues," "does not meet the requirements of 28 U.S.C. § 636(b)(1)," and "constitutes a waiver of the right to de novo review." *Green v. Rubenstein*, 644 F. Supp. 2d 723, 730 (S.D.W. Va. 2009).

Lastly, Plaintiff notes that, despite the drastic and extraordinary nature of mandamus relief, "the circumstances of this civil action are indeed extraordinary." DE 57 at 8. As Judge Swank correctly explains in the First Recommendation, however, extraordinary circumstances are a necessary but not sufficient condition for mandamus relief. *See* DE 52 at 3. Even in allegedly extraordinary circumstances, mandamus relief "cannot issue in a case where discretion and judgments are to be exercised by the officer." *U. S. ex rel. Tucker v. Seaman*, 58 U.S. 225, 230 (1854); *Meyers v. Niemeyer*, No. 23-CV-3014, 2023 WL 8774691, at *2 (D. Md. Dec. 19, 2023) ("mandamus cannot be used to compel the performance of discretionary duties of federal government officers"). In sum, after de novo review of the portions of the First Recommendation to which Plaintiff raised objections, the court finds that the First Recommendation should be adopted in full.

### IV. Second Recommendation (DE 55)

In the Second Recommendation, Judge Swank recommends that the court deny Plaintiff's Motion for Default Judgment as to Belinda K. Sukeena because, prior to Plaintiff's filing of that motion, the court "dismiss[ed] the action without prejudice against Sukeena due to Plaintiff's

5

failure to demonstrate that he timely served Sukeena or good cause for his failure to do so." DE 55 at 1 (referencing DE 43). Plaintiff objected to the Second Recommendation, raising a series of personal and misogynistic attacks against Judge Swank that are entirely irrelevant to the Second Recommendation and do not merit republishing in this order. *See* DE 58 at 1. In that regard, "[t]he [c]ourt has carefully reviewed Plaintiff's submission[] and has found little in the way of a substantive objection to the legal reasoning o[f] the magistrate judge amidst what is predominately slanderous, ad hominem attacks directed toward the federal bench." *Hamrick v. George*, No. 3:04-CV-344, 2006 WL 8456111, at *1 (W.D.N.C. Oct. 27, 2006).[1]

To the extent Plaintiff raised any substantive objection to the Second Recommendation, he notes only that he "timely served summons onto Defendant Sukeena," attaching an email as proof of such service. DE 58 at 8. The email is one from Plaintiff to Sukeena, wherein he states that "[y]ou have been served and have received several copies of summons, the original complaint, and further pleadings." *Id.* at 9. Plaintiff's evidence of service of process is both inadequate and immaterial.

First, an email from a plaintiff to a defendant stating that the defendant has "been served" does not suffice to establish service of process because "[u]nless service is waived, proof of service must be made ***to the court***," and "must be by the ***server's affidavit***." Fed. R. Civ. P. 4(*l*)(1) (emphases added). As the docket in this matter reflects, Plaintiff failed to provide proof "that service ha[d] been obtained upon defendant [] Sukeena." DE 39 at 1. Plaintiff was given notice

---

[1] The court admonishes Plaintiff for employing a legal filing "as a vehicle for ad hominem attack[s] on the [c]ourt." *Rembold v. Helsel*, No. 16-CV-1569, 2017 WL 2559149, at *5 (D. Md. June 13, 2017). Such conduct represents an "abuse[ of] the judicial process," and could warrant "a severe sanction." *Id.*; *accord Lokhova v. Halper*, 995 F.3d 134, 149 (4th Cir. 2021) (concluding that "inappropriate ad hominem attacks" against opposing party in filing constitute basis for sanctions, left to the discretion of the district court). Given the ultimate disposition of the Recommendations, the court will decline to consider sanctions at this time, but wishes to make clear that Plaintiff's "unseemly, ad hominem attacks on the competence and impartiality of the magistrate judge are utterly groundless." *Corrigan v. Mortg. Elec. Registration Sys., Inc.*, No. 1:12-CV-840, 2012 WL 5305186, at *2 (E.D. Va. Oct. 23, 2012).

6

of this failure and directed to "demonstrate good cause to the court why such service was not made . . . within 14 days of receipt of [that] notice." *Id.* "Plaintiff did not respond to the Clerk's notice, [and therefore did] not show[] good cause for his failure to effect service on Defendant Sukeena." DE 43 at 1. Consequently, the court dismissed the action without prejudice against Defendant Sukeena. *Id.* at 2. "Before a default or default judgment may be entered against a defendant, service of process must be effective under the Federal Rules of Civil Procedure." *Joe Hand Promotions, Inc. v. GFL United LLC*, 645 F. Supp. 3d 530, 534 (M.D.N.C. 2022) (internal quotation mark omitted). Because Plaintiff did not provide proof of service as to Sukeena, default or default judgment may not be entered against her.

Second, even if Plaintiff had properly served Sukeena, the fact remains that the court dismissed her from this action prior to Plaintiff filing his Motion for Default Judgment. *Compare* DE 43 at 2 (bearing signature date of October 10, 2023), *with* DE 44 (reflecting signature date of October 11, 2023). As a result, Plaintiff's motion was moot when filed, and must be denied on that basis. As a result, after de novo review of the portions of the Second Recommendation to which Plaintiff raised an objection, the court finds that the Second Recommendation should be adopted in full.

## V. Third Recommendation (DE 56)

In the Third Recommendation, Judge Swank recommends that the court grant three Motions to Dismiss filed by Defendants. DE 56 at 10. The Third Recommendation provides three bases for dismissal of the Complaint. First, the Recommendation notes that Plaintiff's "vague and conclusory allegations of racketeering" do not raise a substantial federal claim, and so therefore the court lacks subject matter jurisdiction. DE 56 at 6-7; *see also id.* at 7 (describing allegations as "pretext to obtain federal court review of state family law proceedings with which [Plaintiff] is

7

dissatisfied"). Second, the Recommendation states that "Plaintiff's attempt to designate his suit as a class action" fails because he has not demonstrated standing to assert claims on behalf of others." *Id.* at 8. Third, the Recommendation concludes that the Complaint fails to state a claim for relief because "Plaintiff's [C]omplaint is wholly devoid of any factual allegations to support an inference that Defendants, or any of them, have engaged in racketeering activity in violation of 18 U.S.C. § 1962 or that Plaintiff's business or property was proximately injured as a result of racketeering." *Id.* at 9. The Recommendation notes that Plaintiff's "vague and conclusory allegations of wrongdoing[ ] fail to provide Defendants with the notice to which they are entitled under Rule 8 [of the Federal Rules of Civil Procedure]." *Id.* at 10.

Plaintiff filed another lengthy objection to the Third Recommendation, which largely mirrors his prior objections, as well as the Complaint. *See* DE 59 at 1-12. As noted previously, these are improper objections because the court's task does not consist of "relitigat[ing the] entire case[] to determine the basis of a litigant's objection." *Elijah*, 66 F.4th at 460. After scrutiny of this objection, the court has identified one specific objection to the Third Recommendation: Plaintiff's position that "[i]t is crystal-clear that this [c]ourt has subject matter jurisdiction upon federal question of civil rights violation under 28 U.S.C. § 1331, because this action arises under the laws of the United States and under 28 U.S.C. § 1964(c) since this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act." DE 59 at 8; *see also id.* ("Additional subject matter jurisdiction arises from violations of due process."), *id.* ("Additional subject matter federal jurisdiction arises from the fact that RICO, attempted-murders, and other felony crimes committed by Defendants . . . generated thousands of potential mass murderers"), *id.* ("Additional subject matter federal jurisdiction arises from the fact that RICO and other felony crimes

8

committed by Defendants damaged USA National [] security"), *id.* (suggesting that subject matter jurisdiction exists because FBI investigation of Defendants' purported crimes is "unfinished").

These conclusory allegations as to the court's subject matter jurisdiction fail to demonstrate the existence of a federal question as a matter of law. "Mere references to the federal Constitution, laws or treaties and mere assertions that a federal question is involved are not sufficient to confer jurisdiction." *McCartney v. State of W.Va.*, 156 F.2d 739, 741 (4th Cir. 1946). In evaluating Plaintiff's objection, the court has duly considered that the "jurisdictional test of facial insubstantiality is a rigorous one against the challenger." *Ridenour v. Andrews Fed. Credit Union*, 897 F.2d 715, 719 (4th Cir. 1990). The court has also considered that a Complaint should not be dismissed for failing to implicate a federal question unless the assertion of a federal right is manifestly "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit." *Oneida Indian Nation of N. Y. State v. Oneida Cnty., New York*, 414 U.S. 661, 666 (1974). To be sure, this is a "low bar." *PEM Entities LLC v. Cnty. of Franklin*, 57 F.4th 178, 184 (4th Cir. 2023). That said, "the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A party may not discharge that burden by "mere assertion of a federal claim." *Id.*

Plaintiff has failed to meet his burden in demonstrating the existence of a federal question. Civil RICO jurisdiction extends to certain subsets of specified activities. *See* 18 U.S.C. § 1962(a) (investing racketeering income in certain enterprises), (b) (use of racketeering activity to obtain interest or control in certain enterprises), (c) (use of enterprise to engage in racketeering activity), (d) (conspiring to violate (a), (b), or (c)). Plaintiff's vague references to RICO violations, without more, does not authorize this court's exercise of subject matter jurisdiction. *See* 18 U.S.C. § 1964(a) & (c) (providing subject matter jurisdiction for violations of Section 1962).

As it relates to the existence of a federal question, the court agrees with Judge Swank that Plaintiff's "allegations of gross malfeasance, gross immorality, crimes of falsifications and fabrications, sabotage of witness testimony and due process, and failure to engage in impartial decision-making by [certain] Defendants suggest that Plaintiff has raised the RICO claims as a pretext to obtain federal court review of state family law proceedings with which he is dissatisfied." DE 56 at 7. In that regard, the purported federal question is "obviously frivolous [and] plainly unsubstantial." *Hannis Distilling Co. v. City of Baltimore*, 216 U.S. 285, 288 (1910). Although "[t]he substantiality doctrine as a statement of jurisdictional principles . . . has been questioned," that doctrine "remains the federal rule and needs no re-examination here." *Hagans v. Lavine*, 415 U.S. 528, 538 (1974).

In resolving Plaintiff's objection to the Third Recommendation's conclusion on subject matter jurisdiction, the court defers to the sound reasoning of the Fourth Circuit in *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278 (4th Cir. 2013). There, like here, "[t]he complaint allege[d] that a [] child trafficking enterprise had orchestrated and caused the termination, by the state courts of North Carolina, of the parental rights of [Plaintiff]." *Id.* at 280. The Fourth Circuit affirmed the district court's holding that subject matter jurisdiction was lacking because the complaint sought to employ "a wholly frivolous federal claim [] as a pretext to allow a state-law issue, the real focus of the claim, to be litigated in the federal system." *Id.* at 289. And the Fourth Circuit recognized that, even if the complaint could be "mined . . . to identify and marshal allegations" related to a "due process" violation, *id.* at 290, those allegations "must be viewed in context, that is, they are scattered within a bizarre [ c]omplaint that features a fictitious [] child trafficking conspiracy," *id.* at 291. Under those circumstances, the plaintiff's claims were

"so attenuated and unsubstantial as to be absolutely devoid of merit." *Id.* (quoting *Hagans*, 415 U.S. at 536). That reasoning applies with equal force here.

Even if the court had subject matter jurisdiction in this action, dismissal would still be warranted because the Complaint fails to state a claim upon which relief may be granted.[2] "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put another way, a plaintiff's "conclusory statements[] do not suffice." *Iqbal*, 556 U.S. at 678. Relatedly, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Fourth Circuit has explained that "[e]ven though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Plaintiff's Complaint deprives Defendants of notice to which they are entitled. At various points, Plaintiff accuses Defendants of engagement or participation in "violation[s] of civil rights," a "criminal industry," "violent crimes," "illegal ways," "an "organized criminal group," "felony crimes," "definitely racketeering," a "criminal scheme," "criminal collusion," "the crimes," a "well-coordinated criminal group," "crimes of physical violence," "assaults," "violent criminals," "numerous crimes," "notorious crimes," "corruption," "extremely evil crimes," an "industry of

---

[2] Although Plaintiff makes no specific objection to this portion of the third Recommendation, out of an excess of caution the court will liberally construe Plaintiff's recitation of his Complaint's allegations in his objection as an attempt to demonstrate that the Complaint does state a claim upon which relief may be granted. *See Martin v. Duffy*, 858 F.3d 239, 245–46 (4th Cir. 2017).

11

crimes," "organized groups of offenders," "racketeering activity," "corruption schemes," "violations of the RICO Statute," and "actions of open corruption." *See* DE 1 at 1-38. The foregoing allegations are mere labels and conclusions; they are not factual allegations. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. They fail to "raise a right to relief above the speculative level" even under the most liberal interpretation of Rule 8, *Iqbal*, *Twombly*, and their progeny.

Again, the court agrees with Judge Swank that "Plaintiff's [C]omplaint is wholly devoid of any factual allegations to support an inference that Defendants, or any of them, have engaged in racketeering activity in violation of 18 U.S.C. § 1962 or that Plaintiff's business or property was proximately injured as a result of racketeering." DE 56 at 9. The Complaint therefore fails to state a claim upon which relief may be granted.

## VI. Conclusion

The Recommendations [DE 52; DE 55; DE 56] are ADOPTED IN FULL and Plaintiff's Objections [DE 57; DE 58; DE 59] are OVERRULED. Plaintiff's Motion to Appoint Dual-Qualified Attorney, Motion to Impose Victim-Protection Program & Motion to Order DOJ/FBI Investigation [DE 12], Plaintiff's Reinstated Motion to Order DOJ/FBI Investigation & Motion to Arrest [DE 21], and Plaintiff's Motion for Default Judgment as to Belinda K. Sukeena [DE 44] are DENIED. Defendants' Motions to Dismiss [DE 25; DE 28; DE 32] are GRANTED. The Clerk of Court is directed to close this matter.

SO ORDERED this 6th day of March, 2024.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE